UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CALVIN EALY,

                Plaintiff,

v.                                                                                          5:12-CV-0640
                                                                                            (GTS)
CAROLYN W. COLVIN, Comm'r of Soc. Sec.,[1]

                Defendant.
_____

APPEARANCES:                                                    OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEAST NEW YORK         MICHAEL J. TELFER, ESQ.
  Counsel for Plaintiff
55 Colvin Avenue
Albany, NY 12206

OLINSKY LAW GROUP                                               KAREN S. SOUTHWICK, ESQ.
  Counsel for Plaintiff
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                                     TOMASINA DIGRIGOLI, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

---

[1] Plaintiff's complaint named Michael J. Astrue, as the Commissioner of Social Security, as the defendant. On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. She has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

# MEMORANDUM-DECISION and ORDER

Currently before the Court, in this Social Security action filed by Calvin Ealy ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 13,14.) For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on May 7, 1970. Plaintiff has completed his education through the tenth grade, which included some special education classes. He later obtained a General Equivalency Diploma. Plaintiff's work history consists of mostly part time employment in cleaning and some full time employment in construction. All of Plaintiff's jobs were of a few months' duration. Generally, Plaintiff's alleged disability consists of back pain stemming from a history of multiple gunshot wounds, broken ribs, pain in his left wrist and ankle, scoliosis, migraine headaches, bipolar disorder, mood disorder, post traumatic stress disorder, depression, anxiety attacks and paranoia. His alleged disability onset date is January 1, 2008.

### B. Procedural History

On September 17, 2008, Plaintiff applied for Supplemental Security Income. Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). Plaintiff first appeared before the ALJ, John P. Ramos, on September 27, 2010. The ALJ postponed the hearing to allow Plaintiff additional time to obtain representation. (T. 145-152.) On January 18, 2011, Plaintiff appeared before the ALJ with counsel and a hearing was conducted. (T. 96-144.) The ALJ issued a written decision finding

Plaintiff not disabled under the Social Security Act on February 25, 2011. (T. 12-30.) On March 1, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 4-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

      C.      **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-24.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. (T. 17.) Second, the ALJ found that Plaintiff's episodic low back pain secondary to history of multiple gunshot wounds, degenerative disc disease of the lumbar spine, poly-substance abuse in remission and bipolar disorder are severe impairments, but that his migraines, blurred vision, right foot arthritis, status post-1997 gunshot wounds to the left leg and face, and carpal tunnel syndrome are not severe. (T. 17-18.) Third, the ALJ found that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 18-19.) The ALJ considered listings 1.04, 12.04 and 12.09. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), in that he is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (T. 20-23.) Further, the ALJ found as follows: Plaintiff "can occasionally engage in postural activities. Additionally, [Plaintiff] retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others, and handle

3

reasonable levels[] of simple, repetitive, work-related stress." (*Id.*)  Fifth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T. 23-24.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues that the ALJ's RFC finding is unsupported by substantial evidence because he erroneously (1) afforded very little weight to the opinion of treating physician, Dr. Howard, (2) afforded significant weight to the vague opinion of consultative examiner, Dr. Tranese, (3) failed to specify the weight afforded to the opinion of Dr. Hochberg, and (4) credited Dr. Hochberg's opinion on an issue reserved to the Commissioner.  (Dkt. No. 13 at 8-15 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the ALJ's credibility determination is unsupported by substantial evidence.  (*Id.* at 15-19.)  Third, and finally, Plaintiff argues that the ALJ's determination at step five of the sequential analysis is unsupported by substantial evidence because (1) it relies on an erroneous RFC determination and (2) the ALJ relied on the grids instead of consulting a vocational expert, which was required due to Plaintiff's significant non-exertional limitations.  (*Id.* at 19.)

### B. Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues that the ALJ's RFC finding was supported by substantial evidence.  (Dkt. No. 14 at 10-16 [Def.'s Mem. of Law].)  Second, Defendant argues that the ALJ properly evaluated Plaintiff's credibility.  (*Id.* at 16-18.)  Third, and finally, Defendant argues that the ALJ properly concluded that Plaintiff could perform a significant number of jobs in the national economy.  (*Id.* at 18-19.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3)*; Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Weighed the Opinions of Drs. Howard, Tranese and Hochberg

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 13, at 9-15 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

#### 1. Dr. Howard

The record contains a "Physician's Medical Report" that was completed by Myles Howard, M.D., of the Syracuse Community Health Center on August 25, 2010, at the request of the Onondaga County Department of Social Services. (T. 511-512.) Included in the report is Dr. Howard's diagnosis of Plaintiff with left lumbar radiculopathy of undetermined length or prognosis that has not required hospitalization or surgery and has been treated with oral analgesics. (*Id.*) Dr. Howard further reported that Plaintiff has no limitations in his ability to see, hear, speak, use his hands or use public transportation. However, Dr. Howard reported that Plaintiff is moderately limited in the areas of walking, standing, sitting, pushing, pulling, bending, lifting, carrying and climbing. (*Id.*) The form defines "[m]oderately limited" as the ability "to perform from 2 to 4 hours/day." (*Id.*)

The ALJ gave "very little weight" to Dr. Howard's report, citing a lack of treatment notes or a history of a treating relationship in the record, which, the ALJ noted, would entitle it to consideration as a treating source opinion. (T. 23.) Plaintiff argues that the ALJ erred by failing to afford Dr. Howard's opinion controlling weight, or alternatively, failing to apply the treating physician rule to determine the appropriate weight. Defendant counters that Dr. Howard's opinion is not supported by substantial evidence because the record contains no accompanying treatment notes from Dr. Howard or any record of treatment.

7

To be sure, the record contains at least two treatment notes from Dr. Howard, dated May 20, 2010 and July 27, 2010, respectively, as well as a diagnostic x-ray report that was completed at the request of Dr. Howard. (T. 493-494, 499-501.) On May 20, 2010, Dr. Howard noted Plaintiff's complaint of mid-back pain that is "aggravated by certain movements" as well as the results of a lumbosacral spine x-ray, which showed "anterior compression of the vertebral body at T11." (T. 499-501.) In the x-ray report, the radiologist further noted that "[s]traightening of the normal lumbar lordosis may represent lumbar muscle spasms. No other abnormality noted." (T. 500.) Dr. Howard prescribed Celebrex and Lortab. (T. 501.) On July 27, 2010, Dr. Howard noted Plaintiff's complaint of burning pain radiating to the left leg along with back pain as well as chronic left wrist pain that is "aggravated by certain movements." (T. 493.) Dr. Howard prescribed Flexeril and continued to prescribe Celebrex and Lortab. (T. 494.)

Plaintiff underwent a consultative examination in November 2008, which resulted in a diagnosis of lower left extremity pain and episodic low back pain. (T. 414-417.) However, a lumbosacral spine x-ray taken at that time was reportedly normal. *(Id.)*

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole;

8

and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

Here, while Dr. Howard's opinion is contradicted in part by the consultative examiner's diagnosis, that exam and diagnosis took place two years prior to Dr. Howard's treatment of Plaintiff and was accompanied by a normal x-ray. Moreover, the ALJ failed to acknowledge Dr. Howard's treating notes or the accompanying x-ray results. Therefore, the ALJ committed legal error by assigning very little weight to Dr. Howard's opinion because he first failed to apply the treating physician rule and then failed to adequately explain his reasons for the weight he assigned.

### 2. Dr. Tranese

The record also includes a report of an orthopedic examination of Plaintiff conducted by consultative examiner, Louis Tranese, D.O. on November 11, 2008. (T. 414-417.) Dr. Tranese opined that Plaintiff has mild limitations with sitting or standing long periods and walking long distances, mild to moderate limitations with frequent bending and squatting, and moderate limitation with heavy lifting. (T. 417.)

The ALJ assigned "significant weight" to Dr. Tranese's opinion, citing his "programmatic expertise" and the fact that the opinion was based on an examination of Plaintiff. (T. 23.) Plaintiff argues that the ALJ erred in assigning significant weight because Dr. Tranese's opinion that Plaintiff has "mild to moderate" limitations with frequent bending and squatting is vague. Defendant counters that Dr. Tranese's opinion is supported by his findings and is "sufficiently clear to assist the ALJ in assessing Plaintiff's [RFC]." (Dkt. No. 14, at 11 [Def.'s Mem. of Law].)

9

The Court of Appeals for the Second Circuit has noted that a physician's "use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ . . . to make the necessary [RFC determination]." *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superceded by statute on other grounds*, 20 C.F.R. § 404.1560(c)(2). Further, Defendant's contention here that Dr. Tranese's opinion is supported by his findings is questionable. For example, Dr. Tranese's findings reflect that Plaintiff can complete a full squat but he opines that Plaintiff has "mild to moderate" limitation with frequent bending and squatting, without any explanation of the apparent inconsistency. Therefore, it was error for the ALJ to afford significant weight to Dr. Tranese's opinion, without first clarifying the ambiguity in Dr. Tranese's report. *See Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir.1999).

### 3. Dr. Hochberg

The State agency's psychological consultant,[2] A. Hochberg, completed a mental RFC assessment as well as a psychiatric review technique form. Included in Dr. Hochberg's assessment is his opinion that, "[b]ased on the totality of the evidence in file it is determined that the claimant retains the [RFC] to perform entry level work activities on a sustained basis." (T. 442.) The ALJ explained that he "gives weight to [Dr. Hochberg's reports] due to his programmatic expertise and because [the] reports were based on a review of [Plaintiff's] medical records." (T. 23.) Plaintiff argues that the ALJ erred by (1) failing to explain the weight

---

[2] "State agency . . . psychological consultants . . . are highly qualified . . . medical specialists who are also experts in Social Security disability evaluation. Therefore, [the ALJ] must consider findings and other opinions of State agency . . . psychological consultants . . . as opinion evidence, except for the ultimate determination about whether [a claimant] is disabled." 20 C.F.R. § 404.1527(e)(2)(i). *See also* § 404.1512(b)(8).

afforded to Dr. Hochberg's opinion, (2) giving more than little weight to an opinion from a non-examining source, and (3) relying on an opinion regarding an issue that was reserved for the Commissioner. Defendant counters that Dr. Hochberg relied on evidence from the reports of the consultative psychologist to support his opinions, and therefore, Dr. Hochberg's opinions constitute substantial evidence.

According to Social Security regulations,

> [w]hen an [ALJ] considers findings of a State agency . . . psychological consultant, the [ALJ] will evaluate the findings using the relevant factors in [20 C.F.R. § 404.1527(a)(2) through (d)], such as the consultant's medical specialty and expertise in [Social Security] rules, the supporting evidence in the case record, supporting explanations the . . . psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency . . . psychological consultant, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [Social Security].

20 C.F.R. § 404.1527(e)(2)(ii). Here, the ALJ failed to give controlling weight to Plaintiff's treating physician. Therefore, the ALJ erred in failing to specify the weight given to the opinion of State agency consultant, Dr. Hochberg. Moreover, the ALJ must not consider a State agency consultant's opinion regarding an issue that is left to the Commissioner, such as whether or not a claimant is disabled. Accordingly, it was error for the ALJ to rely on Dr. Hochberg's opinion that Plaintiff "retains the [RFC] to perform entry level work activities on a sustained basis." (T. 22, 442.)

For all of these reasons, remand is necessary so that the ALJ may revisit his RFC analysis after (1) applying the treating physician's rule to Dr. Howard's opinion, (2) clarifying the ambiguity in Dr. Tranese's report, and (3) specifying the weight applied to Dr. Hochberg's

opinion regarding issues that are not reserved to the Commissioner, in accordance with this Decision and Order.

B. **Whether the ALJ Properly Assessed Plaintiff's Credibility**

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 13, at 15-19 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility:

>(1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id*.

Here, the ALJ considered Plaintiff's claims of his inability to work due to bipolar disorder, old gunshot wounds and multiple orthopedic impairments as well as Plaintiff's hearing testimony that he experiences numbness and tingling in his back, that he favors his left leg, that he has difficulty doing the dishes due to pain in his left wrist, and that he experiences frequent migraine headaches. In addition, the ALJ considered Plaintiff's testimony that he experiences auditory hallucinations, isolates himself and can go a week without shaving or bathing, and that his girlfriend helps him get dressed sometimes. The ALJ noted, however, that Plaintiff's treatment for his physical and mental problems has been mostly conservative, and that Plaintiff's allegations of significant physical and mental limitations are not supported by the objective medical evidence in the record. The ALJ further noted that Plaintiff's poor work history and criminal record do not enhance his credibility. (T. 20-22.) Ultimately, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are credible only to the extent they are consistent with [the ALJ's finding regarding Plaintiff's RFC]." (T. 22.) Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence because he failed to consider all of Plaintiff's allegations regarding his limitations and failed to explain how certain of Plaintiff's alleged abilities demonstrate his ability to work the equivalent of a full time work week. Plaintiff further argues that the ALJ committed legal error when he found Plaintiff's statements credible only to the

extent they are consistent with the ALJ's RFC assessment. Defendant counters that the ALJ properly assessed Plaintiff's credibility by relying on the inconsistency of Plaintiff's allegations with the objective medical evidence of record.

To be sure, "[i]t is erroneous for an ALJ to find a [plaintiff's] statements not fully credible because those statements are inconsistent with the ALJ's own RFC finding." *Ubiles v. Astrue*, No. 11–CV–6340, 2012 WL 2572772, at * 12 (W.D.N.Y. July 2, 2012).[3] Instead, the ALJ must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *See* SSR 96-7p. Therefore, the ALJ applied an erroneous legal standard in assessing Plaintiff's credibility. The ALJ's error is further compounded by his erroneous RFC assessment. Accordingly, remand is necessary so that the ALJ may assess Plaintiff's credibility after applying the correct legal standard, including the re-assessment of the objective medical evidence in the record from Drs. Howard, Tranese and Hochberg, in accordance with this Decision and Order.

**C.    Whether the ALJ Erred at Step Five By Failing to Obtain the Opinion of a Vocational Expert**

After carefully considering the matter, the Court answers this question in the affirmative in part, generally for the reasons stated in Plaintiff's memorandum of law, (Dkt. No. 13, at 19 [Pl.'s Mem. of Law]), and in the negative in part, generally for the reasons stated in Defendant's

---

[3] *See also Nelson v. Astrue*, No. 5:09–CV–00909, 2010 WL 3522304, at *6 (N.D.N.Y. Aug. 12, 2010), *report and recommendation adopted*, 2010 WL 3522302 (N.D.N.Y. Sept. 1, 2010); *Kennedy v. Astrue*, No. 3:09–CV–0670, 2010 WL 2771904, at *5 (N.D.N.Y. June 25, 2010), *report and recommendation adopted*, 2010 WL 2771895 (N.D.N.Y. July 12, 2010); *Smollins v. Astrue*, No. 11–CV–424, 2011 WL 3857123, at *10–11 (E.D.N.Y. Sept. 1, 2011); *Mantovani v. Astrue*, No. 09–CV–3957, 2011 WL 1304148, at *5 (E.D.N.Y. Mar. 31, 2011).

memorandum of law, (Dkt. No. 14, at 19 [Def.'s Mem. of Law]). The Court would only add the following analysis.

Here, at step five of the sequential analysis, the ALJ did not obtain the opinion of a vocational expert in determining whether there are jobs in the national economy that Plaintiff can perform. Instead, the ALJ decided, relying solely on the Medical-Vocational guidelines, that there are jobs in the national economy that Plaintiff can perform. Plaintiff argues that the ALJ erred in failing to obtain the opinion of a vocational expert because, due to Plaintiff's non-exertional limitations, reliance on the Grids was inappropriate. Moreover, Plaintiff argues, because the ALJ relied on an erroneous RFC analysis and assessment of Plaintiff's credibility in deciding that there are jobs in the national economy that Plaintiff can perform, his decision at step five of the sequential analysis is likewise erroneous. Defendant counters that the ALJ's decision at step five was based on substantial evidence, and that reliance on the Grids is proper even where non-exertional limitations exist.

At step five of the sequential analysis, the Commissioner can usually meet his burden to establish that, if a plaintiff is unable to perform his past work, there is other work which he could perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *See Baldwin v. Astrue*, No. 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009). However, when a plaintiff suffers from significant non-exertional limitations that significantly limit his employment opportunities, exclusive reliance on the Grids is inappropriate. *See Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986)). "A plaintiff's range of potential employment is significantly limited when he suffers from the 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to

deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Bapp*, 802 F.2d at 606). However, "the mere existence of a non-exertional impairment does not automatically preclude reliance on the guidelines." *Zabala v. Astrue*, 595 F.3d 402, 410–411 (2d Cir.2010) (citing *Bapp*, 802 F.2d at 603). Where, as here, an ALJ determines that a Plaintiff's mental condition does not limit his ability to perform unskilled work, reliance on the Grids without benefit of a vocational expert is permissible. *See id.*, at 411. Accordingly, Plaintiff's argument that remand is required on this basis is without merit.

Nonetheless, because the ALJ's decision that there are jobs that exist in the national economy that Plaintiff can perform relies on his erroneous RFC determination, remand is necessary so that the ALJ may, among other things, revisit his RFC analysis in accordance with this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **<u>REMANDED</u>** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: August 13, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge